IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-03236-RMR-KAS

DANIELA ROBINSON,

 Plaintiff,

v.

24 HOUR FITNESS USA, LLC and
EMMALEE ANDERSON,

 Defendants.

_____

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Plaintiff Daniela Robinson's Motion for Remand [#19] (the "Motion"). Defendants 24 Hour Fitness USA, LLC ("24 Hour Fitness") and Emmalee Anderson filed a Response [#25] in opposition to the Motion [#19]. Plaintiff filed a Reply [#26]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the following reasons, the Court **RECOMMENDS** that the Motion [#19] be **GRANTED IN PART** and that this case be **REMANDED** to Arapahoe County District Court.

## I. Background

Plaintiff, the surviving spouse of Lawrence Robinson, brought this wrongful death action in Arapahoe County District Court on July 30, 2025. *See generally Compl*. [#4]. In her Complaint [#4], Plaintiff asserts negligence, negligence per se, gross negligence, and premises liability claims against Defendants. *See id*. ¶¶ 73-107. Plaintiff's claims stem from Mr. Robinson's death at the 24 Hour Fitness facility in Aurora, Colorado, on August

3, 2023. *See id*. ¶¶ 31-45.  Plaintiff alleges that Defendants' hot tub was set to an unsafe temperature, causing Mr. Robinson to lose consciousness and drown while using the facility. *See, e.g., id*. ¶¶ 66-72. Plaintiff further alleges that, at the time of Mr. Robinson's death, Defendant Anderson was the acting manager on duty at the location where Mr. Robinson died, *id*. ¶ 17; Defendant Anderson knew the temperature of the hot tub was unsafe for use, *id*. ¶ 92; she nonetheless "represented to [24 Hour Fitness] members that the hot tub at the Aurora location was available for use as a safe amenity on August 3, 2023[,]" *id*. ¶ 32; she and other employees had exclusive control over the hot tub temperature on the day at issue, *id*. ¶¶ 51, 89; and for these and other reasons, Defendant Anderson violated a variety of duties that she owed to Plaintiff. *See, e.g., id*. ¶¶ 74-75, 90.

Plaintiff served Defendant Anderson with the Complaint on September 13, 2025, and served Defendant 24 Hour Fitness on September 19, 2025. *See Notice of Removal* [#1] ¶ 1; *Returns of Serv.* [#11, #12]. Defendants removed this action to federal court on October 14, 2025, alleging that Defendant Anderson, who is a Colorado resident, was fraudulently named as a defendant by Plaintiff solely for the purpose of evading diversity jurisdiction. *See generally id*.

On October 31, 2025, Plaintiff filed her Motion [#19]. In her Motion [#19], Plaintiff argues that Defendants have failed to carry their burden of showing that diversity jurisdiction exists because they have not shown that Plaintiff fraudulently included Defendant Anderson in the Complaint to defeat diversity jurisdiction or that Plaintiff would be unable to establish a cause of action against Defendant Anderson under state law. *See generally Motion* [#19]. In their Response [#25], Defendants counter with three

arguments: all references to Defendant Anderson in the Complaint [#4] are overbroad and general, an exculpatory clause in Mr. Robinson's membership agreement with 24 Hour Fitness bars Plaintiff's claims against Defendant Anderson, and Plaintiff fails to state a viable gross negligence claim against Defendant Anderson. *See generally Response* [#25].

## II. Legal Standard

Removal of civil actions is governed by 28 U.S.C. § 1441. In relevant part, the statute states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." Thus, removal of a state civil action to federal court is appropriate if the federal district court has subject matter jurisdiction. 28 U.S.C. § 1441.

Additionally, pursuant to 28 U.S.C. § 1332(a), federal district courts have jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" To invoke diversity jurisdiction, there must be "complete diversity of citizenship"; that is, no plaintiff can be a citizen of the same state as any defendant. *See Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014). For purposes of diversity jurisdiction, a person is a citizen of a state if he or she is domiciled in that state. *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983). Notably, domicile and residency are not synonymous; "a person acquires domicile in a state when the person resides there *and intends to remain there indefinitely*." *Middleton*, 749 F.3d at 1200 (emphasis added) (citations omitted).

3

A party may move to remand a case based on any defect other than lack of subject matter jurisdiction within 30 days of a notice of removal's filing. 28 U.S.C. § 1447(c). At any time before entry of judgment, if the court appears to lack subject matter jurisdiction over a removed case, the court must remand the case. *Id.* If the district court remands a case, it may award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.* The decision to award fees or costs is within the court's discretion, but generally "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Stated another way, courts typically do not order fees or costs where the defendant "has made good-faith arguments and cited authority to support their removal[.]" *Hunt v. Jack V. Waters, D.C., P.C.*, 403 F. Supp. 3d 1036, 1071 (D.N.M. 2019) (collecting cases).

"Removal statutes are to be strictly construed, and all doubts are to be resolved against removal." *Fajen v. Found. Rsrv. Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982) (internal citations omitted). "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Puentes v. Res-Care, Inc.*, No. 2:20-cv-1320-MV-KRS, 2021 WL 2688872, at *1 (D.N.M. June 9, 2021) (quoting *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)). The removing party carries the burden "to show jurisdiction by a preponderance of the evidence." *Karnes v. Boeing Co.*, 335 F.3d 1189, 1194 (10th Cir. 2003); *see also A.L. by & through Luchsinger v. Pitts*, No. 21-cv-03481-CMA-STV, 2022 WL 3593739, at *2 (D. Colo. Aug. 23, 2022) ("The party invoking federal jurisdiction bears the burden of establishing jurisdiction as a threshold matter.").

### III. Analysis

"To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Long v. Halliday*, 768 F. App'x 811, 814 (10th Cir. 2019) (citing *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013)) (internal quotations marks omitted); *see also Est. of Hill v. Allstate Ins. Co.*, 354 F. Supp. 2d 1192, 1196 (D. Colo. 2004) (same). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher*, 733 F.3d at 988 (quoting *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 461 (2d Cir. 1998)). "If there is even a *possibility* that the state court would find that the complaint states a cause of action against the resident defendant, the federal court must find that the joinder was proper and remand the case to state court." *Frontier Airlines, Inc. v. United Air Lines, Inc.,* 758 F. Supp. 1399, 1404 (D. Colo. 1989) (emphasis added). Here, Defendants bear the burden of proof as the parties who assert fraudulent joinder and seek to remove this action to federal court.

### A.    Sufficiency of Individualized Misconduct Allegations

In responding to Plaintiff's Motion, Defendants first allege that the Complaint does not allege any individualized misconduct by Defendant Anderson. *Response* [#25] at 3-6. In doing so, Defendants rely heavily on the fact that Plaintiff's allegations against Defendant Anderson almost invariably refer to other employees and to Defendant 24 Hour Fitness. More specifically, Defendants state that "[e]ach allegation of wrongdoing against Ms. Anderson is preceded by an allegation against 24 Hour [Fitness], and her inclusion [in the Complaint] is vague, collective, and merely as a generic 'employee or agent' of [24

5

Hour Fitness]." *Id*. at 3. Defendants further contend that "[the Complaint] does not allege with specificity that Ms. Anderson *herself*, separate and apart from any other agents or employees*,* breached any duty 24 Hour [Fitness] might have owed Plaintiff, much less that she individually owed any such duty." *Id*. at 4. In Defendants' view, Plaintiff's allegations merely reflect that Defendant Anderson held a position of responsibility and was "on duty" at the time of the at-issue incident, not that she personally breached any duty owed to Plaintiff. *Id*. at 5.

The Court disagrees. Instead, the Court finds that Plaintiff's Complaint alleges individualized misconduct by Defendant Anderson, conduct in which she personally participated. As examples, the Court points to the following allegations:

- "[A]t all relevant times, Defendant Anderson was the acting manager on duty for Defendant 24 Hour Fitness's Aurora location." *Compl*. ¶ 17;

- "Defendant Anderson[] represented to the members[,] [including Mr. Robinson] that the hot tub at the Aurora location was available for use as a safe amenity on August 3, 2023." *id*. ¶ 32;

- "Defendant Anderson[] knew that the water temperature for the hot tub at the Aurora location was over 104°F." *id*. ¶ 91.

- "Defendant Anderson[] knew that the hot tub at the Aurora location was not safe for use by its gym members, including Mr. [Robinson]." *id*. ¶ 92;

- "Defendant Anderson[] knew that allowing the hot tub to operate above 104°F was in excess of the medically and legally accepted maximum temperature" and that it "posed a strong probability of serious injury or death to its Auror location gym members, including Mr. Robinson." *id*. ¶¶ 93, 94;

6

- "Mr. Robinson lost consciousness between 1:01 p.m. and 1:04 p.m. [on August 3, 2023] as a result of acute hyperthermia caused by the temperature of the hot tub water." *id*. ¶ 36;

- "The temperature for the hot tub at Defendant 24 Hour Fitness's Aurora location was controlled, operated, and maintained solely by the employees . . . including Defendant Anderson." *id*. ¶ 51;

- "Employees . . . including . . . Defendant Anderson[] owed a duty to gym members of the Aurora location, including Mr. Robinson, to ensure that its gym amenities, including the hot tub, were properly maintained and safe for use." *id*. ¶ 74;

- "Employees . . . including . . . Defendant Anderson[] breached their duty of care to Mr. Robinson and w[ere] negligent in causing the August 3, 2023, incident by," for example, failing to "use reasonable care in the operation and management of the hot tub," "ensure the water temperature of the hot tub did not exceed 104°F," "warn the members of its gym that the hot tub was operating above 104°F," "monitor or check the hot tub temperature at regular intervals, despite being required by law and industry standard to do so," and "recognize and respond to Mr. Robinson's visibly unconscious and submerged condition[.]" *id*. ¶ 75; and

- "As a direct and proximate result of the negligent acts and omissions of Defendant 24 Hour Fitness's employees . . . [including] Defendant Anderson, Plaintiff has suffered, and will continue to suffer, injuries, damages, and losses more fully described elsewhere herein." *Id*. ¶ 77.

7

In sum, the Complaint alleges that Defendant Anderson was on duty when Mr. Robinson used the hot tub, she represented to him that the hot tub was safe for use, she owed him a duty to ensure that it was in fact safe for use, the hot tub was unsafe for use, and Mr. Robinson suffered injury as a result of these acts and omissions. These allegations alone plausibly allege individualized misconduct by Defendant Anderson.

The Court acknowledges that nearly all the allegations implicate Defendant 24 Hour Fitness in wrongdoing as well as Defendant Anderson. However, the Court is aware of no authority supporting Defendants' intimation that Plaintiff cannot establish a cause of action against Defendant Anderson simply because Plaintiff alleges that *both* Defendant Anderson and Defendant 24 Hour Fitness are liable for the same violations. Relatedly, despite Defendants' contrary arguments employees can be held liable under Colorado law for their tortious acts or omissions even when those acts or omissions occur within the course of their employment and on behalf of the corporate employer. *See, e.g.*, *Levin v. Five Corners Strategies, LLC*, 541 F. Supp. 3d 1262, 1268 (D. Colo. 2021) ("an individual is still liable for the torts he or she commits, even in the course of employment."); *Hoang v. Arbess*, 80 P.3d 863, 868 (Colo. App. 2003) ("that a defendant is at all times acting on behalf of the corporation does not relieve the defendant of liability.").

Similarly, the Court is unaware of any authority supporting Defendants' implied assertion that Plaintiff cannot establish a cause of action against Defendant Anderson simply because the Complaint reflects that other employees or agents may *also* be liable for overlapping or identical conduct. Plaintiff does not merely allege that Defendant Anderson *may* be liable in this action as part of an amorphous category of "employees or agents" who worked for Defendant 24 Hour Fitness. Plaintiff, rather, alleges that

8

Defendant Anderson was on duty when the accident occurred, that she owed a duty to Mr. Robinson, and that she breached that duty by misrepresenting that the hot tub was available for use as a safe amenity on the day of the incident at issue. Put another way, although Plaintiff *also* implicates other employees, Plaintiff nonetheless specifically and affirmatively implicates Defendant Anderson. *Cf. Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) ("[T]o state a claim in federal court, a complaint must explain what each defendant did to [the plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated."). And while Plaintiff may ultimately be unable to conclusively demonstrate that Defendant Anderson was directly involved in committing these violations, the veracity of her allegations goes to the merits of this case and is not at issue here. Accordingly, these allegations are sufficient for the Court to conclude that there is some possibility that Plaintiff will be able to establish a cause of action against Defendant Anderson.

Accordingly, the Court **recommends** finding that the allegations Plaintiff states against Defendant Anderson are individualized and specific enough to create some possibility that Plaintiff will be able to establish a cause of action against Defendant Anderson.

B.    **Exculpatory Clause and "Merits" Issue**

Defendants further allege that an exculpatory clause in Mr. Robinson's membership agreement expressly releases Defendant 24 Hour Fitness's employees from liability for injuries arising from their actions or inactions, and that accordingly, this clause forecloses Defendant Anderson from facing liability here. *See Response* [#25] at 6-8.

Relatedly, Defendants allege that Plaintiff improperly attempts to "recast" Defendants'
arguments as going to the merits of this action instead of to the threshold jurisdictional
issue before the Court. *Id*. at 9-10.

The Court again disagrees with Defendants. Asserting the existence of an
exculpatory clause is an affirmative defense, *Schlumbrecht-Muniz v. Steamboat Ski &
Resort Corp.*, 132 F. Supp. 3d 1310, 1314 (D. Colo. 2015), and affirmative defenses
"provide[] insufficient grounds for removal jurisdiction." *Heritagewest Fed. Credit Union v.
Ness*, No. 10-cv-1117-DAK, 2011 WL 2294228, at *1 (D. Utah June 9, 2011). Noting this
principle, the Court agrees with Plaintiff that this exculpatory clause issue goes to the
merits, which is beyond the threshold jurisdictional issue properly before the Court.
Accordingly, the exculpatory clause provides insufficient grounds for removal jurisdiction
and the Court declines to consider it at this stage of proceedings.

Alternatively, even if the Court were to consider the exculpatory clause, the Court
would disagree with Defendants and would instead find *some* possibility that the state
court would find the Complaint states a cause of action against Defendant Anderson.
After all, exculpatory clauses are generally disfavored under Colorado law, *B & B Livery,
Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. 1998), and courts do not permit them to "shield
against a claim of willful and wanton negligence," *Chadwick v. Colt Ross Outfitters, Inc.*,
100 P.3d 465, 467 (Colo. 2004). Further, a court in this District previously deemed an
identical exculpatory clause potentially unenforceable because the clause failed to
identify specific dangers, much less the extraordinary, unforeseeable, and nonobvious
danger of an explosion in the steam room and the consequent burns the plaintiff suffered.
*See Diaz, v. 24 Hour Fitness USA, LLC*, No. 25-cv-00207-RMR-MDB, 2025 WL 4354374,

at *6-7 (D. Colo. Oct. 28, 2025), *report and recommendation adopted*, 2026 WL 510339 (D. Colo. Feb. 5, 2026), *report and recommendation adopted on reconsideration*, 2026 WL 952746 (D. Colo. Feb. 10, 2026). Thus, some possibility exists that a state court would similarly conclude that the harm Plaintiff suffered, allegedly due to an abnormally overheated hot tub, would not have been obvious to an experienced gym user. Therefore, the exculpatory clause does not necessarily foreclose Plaintiff's claim against Defendant Anderson.

Accordingly, the Court **recommends** finding that the exculpatory clause in Mr. Robinson's membership agreement does not foreclose remand.[1]

## C.     Plaintiff's Request for Fees and Costs

Plaintiff requests an award of the fees and costs she incurred due to Defendants' attempt to remove this case to federal court, alleging that Defendants lacked an objectively reasonable basis for doing so. *See Motion* [#19] at 8-10.

While the Court agrees that Defendants have failed to meet their burden to show that diversity jurisdiction exists, the Court nevertheless finds that Defendants had an objectively reasonable basis and presented good-faith arguments for removing this action to federal court. Plaintiff invariably groups her allegations against Defendant Anderson together with allegations against Defendant 24 Hour Fitness and other employees, which triggered Defendants' argument that Plaintiff failed to state a viable claim against Defendant Anderson. Moreover, Defendants reasonably argue with reference to authority that the law favors removal here. Although the Court disagrees with Defendants, the Court

---

[1] Because the Court finds that Plaintiff has sufficiently stated a simple negligence claim against Defendant Anderson and that the exculpatory clause does not foreclose remand, the Court need not reach the sufficiency of Plaintiff's gross negligence allegations.

does not find their arguments to be entirely meritless, so unreasonable, or so lacking in good faith to warrant an award of Plaintiff's fees or costs. *See Martin*, 546 U.S. at 141; *Hunt*, 403 F. Supp. 3d at 1071. The Court therefore **recommends** denying Plaintiff's request for fees and costs.

## D.    Defendants' Motion to Dismiss

Finally, the Court notes that Defendants have filed a Motion to Dismiss [#30], which has been referred to this Court. *See Order* [#39]. However, because the Court recommends finding that diversity jurisdiction does not exist, the Court finds that it lacks jurisdiction to issue a recommendation on the Motion to Dismiss [#30]. *See Doe 101 v. Catholic Diocese of El Paso*, No. 2:19-cv-00221 WJ/GBW, 2019 WL 3766192, at *1 (D.N.M. Aug. 9, 2019) (declining to rule on pending motions to dismiss upon finding remand warranted due to lack of subject matter jurisdiction).

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#19] be **GRANTED IN PART** and that this case be **REMANDED** to Arapahoe County District Court pursuant to 28 U.S.C. § 1447(c).

IT IS HEREBY **RECOMMENDED** that Plaintiff's request for fees and costs associated with the Motion [#19] be **DENIED**.

In light of this Recommendation, IT IS HEREBY ORDERED that the parties' **Third Joint Motion to Reschedule Scheduling Conference** [#44] is **GRANTED**. The Scheduling Conference set for June 10, 2026, at 11 a.m. is **VACATED**.

IT IS FURTHER ORDERED that the parties shall file a joint motion to reset the Scheduling Conference within 14 days of the District Judge's adjudication of this Recommendation, if this Recommendation is rejected and the Motion for Remand [#19] is denied.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: June 1, 2026                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

13